Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,220






IVAN ABNER CANTU, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM COLLIN COUNTY






 KELLER, P.J., delivered the opinion of the Court in which MEYERS,
KEASLER, HERVEY and COCHRAN, JJ., joined. WOMACK, J., filed a dissenting opinion
in which PRICE and JOHNSON, JJ., joined. HOLCOMB, J., concurred in the result.


O P I N I O N




 Appellant was convicted in October 2001 of capital murder. (1) Pursuant to the jury's answers to
the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial
judge sentenced appellant to death. (2) Direct appeal to this Court is automatic. (3) Appellant raises thirteen
points of error. We shall affirm.

I. SUFFICIENCY OF THE EVIDENCE


A. Guilt


1. Legal


 In point of error six, appellant claims the evidence is legally insufficient to support his conviction for
capital murder. He argues that "apart from the evidence resulting from the unlawful search of [his]
apartment, the only convincing evidence in the record that connects him to the murders is the testimony of
Amy Boettcher." He maintains that, because Boettcher was an accomplice, her testimony must be
corroborated under Article 38.14. He says that the only evidence that corroborates her testimony was
illegally obtained and therefore cannot be considered. (4)

 An accomplice participates with a defendant before, during, or after the commission of a crime. (5) 
The participation must involve an affirmative act that promoted the commission of the offense with which
the accused is charged. (6) One is not an accomplice for failing to disclose a crime or even concealing it. (7) 

 Appellant and Boettcher shared an apartment not far from the victims, James Mosqueda and Amy
Kitchens. Mosqueda was appellant's cousin. On the night of the offense, appellant told Boettcher he was
going to Mosqueda and Kitchens' house to kill them, but Boettcher did not believe him. Appellant spoke
with Mosqueda on the phone before leaving at about 11:30 p.m. While appellant was gone, Boettcher
talked on the phone with her stepfather, whom she and appellant were going to visit in Arkansas the next
day. When appellant returned around 12:20 a.m., his face was swollen and he had what looked like blood
on his jeans and in his hair. He told Boettcher that "it wasn't pretty" and began unloading his gun,
complaining that it had jammed on him. He had the victims' identification and car keys. Boettcher testified
that she threw appellant's bloody jeans in the kitchen trash can. After he cleaned up, appellant made
Boettcher return with him to the victims' house to see what he had done. They drove Kitchens' Mercedes. 
Boettcher testified that she could see the victims' bodies through the doorway to the master bedroom. 
They parked the Mercedes in the garage and left in Mosqueda's Corvette. Appellant gave Boettcher a
diamond engagement ring that had belonged to Kitchens. Boettcher did not attempt to elude appellant or
turn him in after learning of the murders. She testified that she was terrified of appellant and thought he
might kill her. Appellant had shot at Boettcher with a pistol the night before the murders and slammed the
door on her hand as she tried to leave. 

 There is no evidence that Boettcher intended to promote the offense or assisted in its commission. 
Viewing the murder scene after the fact, failing to report the offense, assisting appellant in returning
Kitchens' car to the scene, and failing to extricate herself from appellant after becoming aware that he had
committed the offense are not acts that render Boettcher an accomplice to the offense. Because she was
not an accomplice, her testimony needed no corroboration. Point of error six is overruled.

2. Factual


 In his seventh point of error, appellant claims the evidence is factually insufficient to support his
conviction for capital murder. Evidence is factually insufficient if, viewing all of the evidence in a neutral
light, "the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." (8) Again, appellant
argues that Boettcher was an accomplice, that her testimony was unreliable and requires corroboration,
and that there was no other admissible evidence linking appellant to the crime. Appellant does not explain
with any more specificity in what way the evidence was factually insufficient.

 As discussed above, Boettcher was not an accomplice. Her testimony clearly showed appellant's
involvement in the crime. While appellant challenges her credibility, the credibility of a witness is the
province of the jury, and the jury's determination in that regard generally should not be disturbed, even in
a factual sufficiency review. (9) 

 Moreover, even without considering the evidence appellant claims was illegally obtained, (10) there
was a substantial amount of other evidence of his guilt. The murder weapon was found at the home of one
of appellant's friends, with whom appellant and Boettcher had stayed in the days following the offense. 
Appellant's fingerprints were found on the magazine of the gun, along with Mosqueda's blood on the gun
barrel. Appellant's fingerprints were also found on Kitchens' Mercedes. Evidence was presented that
appellant showed off the engagement ring he gave to Boettcher to numerous people on the night of the
offense, and to Boettcher's family in the days after the offense. Appellant was seen wearing Mosqueda's
bracelet in the days after the murders and the bracelet was found at Boettcher's parents' house in the room
where Boettcher and appellant stayed following the offense. In addition, Jeff Boettcher testified that
appellant told him less than a month before the murders that appellant wanted to kill Mosqueda, and after
the offense, appellant called Jeff and told him to check out the newspaper. Finally, records from the toll
road reflecting the comings and goings of the Mercedes and Corvette on the night of the offense
corroborated Amy Boettcher's version of events. 

 Appellant does not contend that there is any exculpatory evidence in the trial record that could be
weighed against the inculpatory evidence, and we find none. We cannot say that the jury's verdict is so
lacking in support or so outweighed by contrary proof as to be clearly wrong and manifestly unjust. We
hold the evidence supporting the conviction to be factually sufficient. Point of error seven is overruled.

B. Punishment


1. Future dangerousness - legal


 In his eighth point of error, appellant claims the evidence is legally insufficient to support the jury's
finding that appellant would be a continuing threat to society. (11) We consider all of the evidence presented
at both phases of trial and ask whether, viewing that evidence in a light most favorable to the verdict, any
rational trier of fact could have found beyond a reasonable doubt that there is a probability that appellant
would commit criminal acts of violence that would constitute a continuing threat to society. (12) 

 The facts of the offense show the depravity of appellant's character. As first cousins, appellant and
Mosqueda grew up together. They shared apartments over the years and worked together in various
business enterprises. Trusting appellant, Mosqueda allowed him into his house at nearly midnight to "talk." 
Witnesses testified that appellant was jealous of Mosqueda's material wealth and success in business. 
Appellant searched the house for drugs and money after the murders, and stole Mosqueda's watch and
bracelet and Kitchens' diamond engagement ring. Later that night appellant gave Kitchens' ring to
Boettcher as he proposed marriage. Driving Mosqueda's Corvette, the two then went out partying at
several places where appellant showed off the ring and announced that they were engaged. Appellant
showed no remorse the night of the offense, taking Boettcher back to the scene to show her what he had
done, to gather some things that he had left, and to continue looking for drugs and money. When visiting
Boettcher's parents in the days following the offense, appellant acted as though nothing was wrong. He
made several self-serving phone calls to friends in which he told a story about a man who had appeared
at his apartment on the night of the offense and had threatened his and Mosqueda's lives.

 In addition to the facts surrounding the double murder, the State also presented evidence of
appellant's abusive conduct during his two marriages and toward Boettcher. Boettcher testified that the
night before the offense she and appellant had an argument. In his anger, appellant retrieved a pistol and
shot it at her head. When Boettcher tried to leave the apartment, appellant slammed the door on her hand
and "smacked" her across the face. He then held the gun to her head and told her he was "serious." He
also told Boettcher that going to the police would be futile because the police all worked for him and would
not help her. Appellant's first wife, Michelle Traister, described episodes in which appellant threw her to
the floor, while beating her face and slamming her head repeatedly against concrete and tile surfaces. In
one instance, as appellant choked her, he stated that he wanted to kill her. Traister blacked out and when
she came to, appellant ripped her clothes off and forced her to have sex with him. In another instance,
appellant beat Traister's head and face so severely that she still exhibited bruises days later when she finally
returned to work. Several police officers testified about responding to domestic disturbance calls from
appellant's second wife, Jennifer. In each case, upon arrival, the police officers witnessed bruises on
Jennifer which she said were caused by appellant's beating. Jennifer told one of the officers that appellant
had told her he wanted to kill her. A friend of Jennifer's testified that she saw Jennifer's bruises and
advised her to leave appellant. There was also testimony about incidents between appellant and his mother
in which appellant flew into a violent rage and others had to intervene on behalf of appellant's mother. 
Finally, there was evidence of appellant's continued drug abuse, reckless driving, convictions for a DWI,
a public intoxication, evading arrest, a controlled substance charge, and failed probation. 

 All of the evidence taken together and viewed in the proper light support the jury's finding beyond
a reasonable doubt that there is a probability that appellant would commit criminal acts of violence that
would constitute a continuing threat to society. Point of error eight is overruled. 

2. Future dangerousness - factual


 In his ninth point of error, appellant claims the evidence is factually insufficient to support the jury's
affirmative answer to the future dangerousness issue. This Court does not conduct a factual sufficiency
review of the future dangerousness special issue. (13) Point of error nine is overruled.

3. Mitigation - legal and factual


 In his tenth point of error, appellant claims the evidence is both legally and factually insufficient to
support the jury's answer to the mitigation special issue. We do not review the sufficiency of the evidence
to support the jury's answer to the mitigation special issue. (14) Point of error ten is overruled.

II. GUILT


A. Motion to suppress


1. Search


 In points of error one through three, appellant claims the trial court abused its discretion by denying
appellant's motion to suppress evidence obtained by allegedly illegal searches of his apartment on
November 4, 7, and 29, 2000, in violation of Articles 18.02(10) and 38.23, the Fourth Amendment to the
United States Constitution, and Article I § 9 of the Texas Constitution. (15)

 

 Assuming, without deciding, that the searches were illegal, we find the admission of the evidence
to be harmless. As a result of these searches, the police recovered the following evidence: (1) a pair of
jeans; (2) a pair of socks; (3) a box of .380 bullets; (4) a Dooney & Burke key ring with keys; (5) a set
of assorted keys; (6) a silver Mercedes Benz key; (7) a black Mercedes Benz key; and (8) a bullet found
in the wall of appellant's apartment. Blood on the jeans and socks was analyzed and determined to match
the victims' DNA. 

 Amy Boettcher's testimony about the offense wholly incriminated appellant in the murders and
robbery, and her version was corroborated by other evidence. In addition, as discussed in the section of
this opinion relating to the factual sufficiency of the evidence to support guilt, there was a great deal of
circumstantial evidence, obtained from sources other than the searches in question, that linked appellant
to the crime. Finally, both Amy and Jeff Boettcher testified about appellant's expressed desire to kill the
victims.

 As for the bullet recovered from the wall in appellant's apartment, the existence of that bullet did
nothing to link appellant to the crime. While the recovery of the bullet corroborates Boettcher's testimony
that appellant shot at her with a pistol and slammed her hand in the door, other evidence corroborated her
version of these events, such as a neighbor who testified to hearing a loud sound like a gun, and a witness
who testified about the injuries to Boettcher's hand. We find beyond a reasonable doubt that the evidence
did not contribute to appellant's conviction or punishment. (16) Points of error one through three are
overruled. 

2. Arrest


 In point of error four, appellant claims his arrest on November 8, 2000, was illegal in violation of
his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 §§
9, 10 of the Texas Constitution. He complains that this arrest was a fruit of the illegal searches and that
evidence of this arrest should have been suppressed. But appellant entered into an agreement with the
State at trial that any statements or other evidence stemming from the allegedly illegal arrest would not be
offered into evidence. There is no indication in the record that the agreement was breached and appellant
does not claim it was. Point of error four is overruled.

B. Accomplice witness jury instruction


 In his fifth point of error, appellant claims the trial court abused its discretion in denying his request
to instruct the jury that appellant's girlfriend, Amy Boettcher, was an accomplice as a matter of law. A
prosecution witness who is indicted for the same offense with which the defendant is charged or a lesser-included offense based upon participation in the commission of the greater offense is an accomplice as a
matter of law. (17) If a prosecution witness is an accomplice as a matter of law, the trial court has a duty to
instruct the jury accordingly. (18) However, we have already found that Boettcher was not an accomplice as
a matter of law. Therefore, the trial court did not abuse its discretion in denying appellant's request for an
instruction. Point of error five is overruled.

III. PUNISHMENT


 In point of error eleven, appellant contends that Articles 37.071 and 44.251 are unconstitutional
under the Eighth and Fourteenth Amendments by failing to provide meaningful review of the punishment
issues. Identical claims have been addressed and rejected. (19) Point of error eleven is overruled.

 In his twelfth point of error, appellant argues that Article 37.071 is unconstitutional under the Eighth
and Fourteenth Amendments because it fails to adequately define the term "society" in the context of the
future dangerousness punishment special issue. This Court has repeatedly held that this term need not be
defined, as it is presumed to be understood by the jury without instruction. (20) Point of error twelve is
overruled.

 Relying on Justice Brennan's dissent in Gregg v. Georgia, 428 U.S. 227 (1976), appellant claims
in his thirteenth point of error that the Texas death penalty scheme constitutes cruel and unusual punishment
in violation of the Eighth Amendment. This Court is not bound by Justice Brennan's dissent. Moreover,
we have previously rejected facial challenges to the Texas death penalty scheme under the Eighth
Amendment. (21) Point of error thirteen is overruled.

 The judgment of the trial court is affirmed.

 KELLER, Presiding Judge



Delivered: June 30, 2004


Do not publish
1. Tex. Penal Code § 19.03(a). 
2. Art. 37.071 § 2(g). Unless otherwise indicated, all references to Articles refer to the Texas
Code of Criminal Procedure.
3. Art. 37.071 § 2(h).
4. Although appellant cites Jackson v. Virginia, 443 U.S. 307 (1979), his argument that the
evidence is legally insufficient is based solely on the effect of the statutory accomplice witness rule.
5. Kutzner v. State, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999). 
6. Id.
7. Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). 
8. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
9. Ortiz v. State, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 998 (2003).
10. We express no opinion about the propriety of considering such evidence in a factual sufficiency
review.
11. Art. 37.071 § 2(b). 
12. Manns v. State, 122 S.W.3d 171, 193 (Tex. Crim. App. 2003).
13. Allen v. State, 108 S.W.3d 281, 285 (Tex. Crim. App. 2003). 
14. McFarland v. State, 928 S.W.2d 482, 499 (Tex. Crim. App.1996), cert. denied, 519 U.S.
1119 (1997); Lawton v. State, 913 S.W.2d 542, 557 (Tex. Crim. App.1995), cert. denied, 519 U.S.
826 (1996). 
15. In his points of error, appellant mistakenly refers to the third search as occurring on November
22, but the search warrant for that search is dated November 29, 2000. 
16. Tex. R. App. Proc. 44.2(a).
17. Herron v. State, 86 S.W.2d 621, 631 (Tex. Crim. App. 2002)(citing Ex parte Zepeda, 819
S.W.2d 874, 876 (Tex. Crim. App.1991)).
18. Blake v. State, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). 
19. Resendiz v. State, 112 S.W.3d 541, 549 (Tex. Crim. App. 2003); Eldridge v. State, 940
S.W.2d 646, 651-53 (Tex. Crim. App. 1996).
20. Ladd v. State, 3 S.W.3d 547, 572-73 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000). 
21. Brooks v. State, 990 S.W.2d 278, 288 (Tex. Crim. App.), cert denied, 528 U.S. 956 (1999).